## FRANCIS CLEARY v. W. F. WEBSTER.[1]

March 11, 1927.

No. 25,822.

**Where otherwise innocent language becomes libelous only by forced construction, demurrer to complaint good.**

1. On demurrer to a complaint for libel, where the publication is not libelous per se and innuendo is resorted to for the purpose of making it appear so in fact, it is for the court to determine whether the construction put forward by the innuendo is permissible. If it is not, if it is forced and unnatural, the demurrer should be sustained.

**Language used not susceptible of defamatory construction.**

2. Language which at worst falsely charges plaintiff, a school principal, with having formed an adverse judgment of the work and qualifications of a grade teacher, *held* not susceptible of any construction which would make it defamatory.

Libel and Slander, 36 C. J. p. 1143 n. 44; p. 1190 n. 68; 37 C. J. p. 24 n. 29; p. 52 n. 31; p. 103 n. 38.

---

See 17 R. C. L. 398; 3 R. C. L. Supp. 676; 4 R. C. L. Supp. 1127; 6 R. C. L. Supp. 1013.

Plaintiff appealed from an order of the district court for Hennepin county, Bardwell, J., sustaining a demurrer to the amended complaint. Affirmed.

*Joseph Cleary,* for appellant.
*Slater & Aas,* for respondent.

[1]Reported 212 N. W. 898.

STONE, J.

Action for libel and appeal by plaintiff from an order sustaining a general demurrer to his amended complaint.

At the times in question plaintiff was principal of the Grant school in Minneapolis and defendant the superintendent of schools of that city. Miss Ora Peake was a grade teacher in the Grant school. The charge of libel is based upon a letter written by defendant to Miss Peake, February 18, 1926. It stated that the board of education was of the opinion that teachers who had been in the service "long enough so that the principal of the school must know of the quality of their teaching should not receive contracts for the ensuing half year," and that it "would have rejected the recommendation [assumed to be that Miss Peake get a half year contract] had it not been * * * to maintain the promise of the principal." The letter proceeded thus:

"It would seem to me that if, at the end of this school year, the principal of your school or the assistant superintendent still feels that your work is poor, you ought to resign. It will be necessary for the principal to make a recommendation regarding you at least four months before the termination of your half-year contract, that is, during the month of September of next year. Certainly, in that short time there can be no change in the character of your teaching that should warrant a change in his judgment."

This letter, plaintiff charges, by innuendo conveyed and was intended to convey to Miss Peake the meaning that plaintiff as her principal had reported to his superior that her "work as a teacher was poor" and that she "was not a competent or efficient teacher" and in consequence "should not be retained as a teacher for more than another half year." It is averred also that "said references to this plaintiff * * * were not made in good faith, and were knowingly false and maliciously made by defendant;" and that the letter became known to the friends and acquaintances of Miss Peake and Minneapolis people generally, by whom it was generally taken to mean that plaintiff had made the adverse report concerning her and that she would not be re-employed as a teacher.

The allegation of damage is this:

"That by reason of said false and malicious publication, this plaintiff has been exposed to hatred, contempt, and ridicule, and has caused him to be shunned and avoided, and has a tendency to and has injured him in his profession or occupation as a teacher and principal, and has caused him suffering, pain and humiliation, to his damages in the sum of fifteen thousand dollars."

It is obvious that the publication was not libelous per se. That is because the words used, upon their face and without the aid of extrinsic proof, are not defamatory. Pratt v. Pioneer Press Co. 30 Minn. 41, 14 N. W. 62. So in order to make a case it was necessary to allege extrinsic circumstances which would show the publication libelous in fact. Ten Broeck v. Journal Printing Co. 166 Minn. 173, 207 N. W. 497, and cases cited. It was thought below that no such circumstances had been pleaded. The demurrer was sustained also upon the ground that special damages had not been pleaded and that the publication being privileged there was a failure in the consequent necessity of pleading special damages.

1. In our judgment the pleading is bad in substance. On demurrer to a complaint for libel, where the publication is not libelous per se and it is necessary in consequence to allege by way of inducement or innuendo the extrinsic facts and resulting construction which make for libel in fact, it is for the court to "inquire whether the innuendo is warranted by the language used, considered in connection with the other facts to which it relates, and if not found to be warranted, the demurrer will be sustained." 37 C. J. 52. "The quality of an alleged libel, as it stands on the record, either simply, or as explained by averments and innuendoes, is purely a question of law for the court." 17 R. C. L. 398, citing Brinsfield v. Howeth, 107 Md. 278, 68 Atl. 566, 24 L. R. A. (N. S.) 583; Diener v. Star-Chronicle Pub. Co. 230 Mo. 613, 132 S. W. 1143, 33 L. R. A. (N. S.) 216; Collins v. Dispatch Pub. Co. 152 Pa. St. 187, 25 Atl. 546, 34 Am. St. 636. In the Diener case that was the ruling notwithstanding the provision of the Missouri constitution that in libel suits the jury shall, under direction of the court, determine both law and

fact. An obviously correct conclusion because the province of a general demurrer is to determine whether there is in fact any issue for trial, with or without a jury. And it was held, as we hold here, that language which in and of itself is not defamatory cannot be made so by innuendo which attempts to put upon it an unreasonable, forced or unnatural construction. No innuendo can be good which puts forward a construction different or beyond what "reasonable men would understand." Hubbard v. Furman University, 76 S. C. 510, 57 S. E. 478.

2. The innuendo in this case plainly purposes to ascribe a defamatory character to language which in and of itself is both innocent and innocuous. Returning to defendant's letter, we find easily the expression of an assumption that two of Miss Peake's immediate superiors entertained the idea that her work was poor. There is however a very distinct equivocation in that the adverse opinion is not charged directly to plaintiff, Miss Peake's principal, but in the alternative to him and the assistant superintendent. There is nothing in the complaint which clearly removes that difficulty or which justifies the construction, which it is charged was put upon the letter, that plaintiff was the sole source of an official, unfavorable report concerning Miss Peake's work.

The next idea expressed is that, because of the probable inability of the principal, plaintiff, so soon to change "his judgment" of Miss Peake it would be impossible for him to make the favorable recommendation which she would require by the following September in order to get a renewal of her contract. Therefore, while the letter is not susceptible of the construction that plaintiff had actually made an adverse official report concerning Miss Peake, it does take the interpretation that he had formed and was not likely to change in four months an adverse judgment of her work. No amount of innuendo can make the letter take on any construction more unfavorable to plaintiff. The utmost charged then, within the limits of construction permitted by reason, is that plaintiff has formed and may not change speedily an adverse judgment of a competent teacher. Assuming the falsity of the charge, how can it be libelous? Plaintiff is not charged with ill-will, malicious or otherwise, towards

Miss Peake. He is not charged with any improper official or professional conduct or shortcoming. He has been charged with what at the worst may be supposed to have been a mistake of judgment, reached in perfect good faith and the exercise of a proper official discretion. Moreover, the opinion is averred, by inference at least, to have been shared by plaintiff's immediate superior, the assistant superintendent.

So the innuendo is far-fetched, harsh and beyond anything that the language is properly and reasonably susceptible of. Language otherwise innocent cannot be converted into libel by innuendo giving it a forced and unnatural construction. No permissible construction of the language could have tended to bring plaintiff into disrepute or to have exposed him to public hatred, contempt or ridicule, within any of the accepted definitions of libel, for which see Dun. Dig. § 5501; 36 C. J. 1143. We hold that the complaint fails to charge libel.

Order affirmed.